A91A1122, A91A1123. OLUKOYA v. AMERICAN ASSOCIATION OF CAB COMPANIES, INC.
(414 SE2d 275)

CARLEY, Presiding Judge.

Appellant-plaintiff operates a taxicab. The cab is jointly owned by appellant and appellee-defendant. As to the jointly owned cab, only appellee had sought and received a certificate of self-insurance from the Commissioner of Insurance (Commissioner) pursuant to OCGA § 40-9-101 (a) (2). After appellant was injured when the cab was struck by another vehicle, he sought no-fault benefits from appellee. Appellee denied the claim and appellant brought suit, seeking to recover the no-fault benefits, penalties, punitive damages and attorney's fees. Appellee answered, denying the material allegations of appellant's complaint. During discovery, the trial court granted appellee's motion for a protective order, but certified its order for immediate review. Appellant applied for an interlocutory appeal from that order and Case No. A91A1122 results from the grant of his application. Subsequently, appellee moved for summary judgment. The trial court granted summary judgment in favor of appellee and, in Case No. A91A1123, appellant appeals directly from that order. The

---

two appeals are hereby consolidated for appellate disposition in this single opinion and we will initially address the merits of appellant's direct appeal from the grant of summary judgment in favor of appellee.

## Case No. A91A1123

1. Appellee had acknowledged in the application for self-insurance submitted for the Commissioner's approval that, in its capacity as a self-insurer, "the *no-fault benefits* [that it] provided . . . to *drivers* . . . are *identical* with the minimum requirements of the [former] Motor Vehicle Reparations Act of Georgia, . . . and *nothing* [*in the plan of self-insurance*] *shall be construed otherwise*." (Emphasis supplied.) Appellant was clearly a "driver" of the cab. However, the trial court apparently concluded that, insofar as appellant was also the co-owner of the cab, he necessarily occupied the status of a co-self-insurer and, as a matter of law, he could not occupy the status of an insured under appellee's plan of self-insurance.

Nothing in OCGA § 40-9-101 (a) (2) prohibits only one of the joint owners of a vehicle from seeking to secure a certificate of self-insurance solely in his name or compels all of the joint owners collectively to seek to secure a certificate of self-insurance in all of their names. OCGA § 40-9-101 (a) (2) provides, in relevant part, only that "[a]ny person who operates one or more vehicles for hire which transport passengers and in whose name a certificate of title has been issued . . . on one or more [of] such vehicles may qualify as a self-insurer by obtaining a certificate of self-insurance from the Commissioner. . . ." Likewise, nothing in OCGA § 40-9-101 (a) (2) prohibits the Commissioner from issuing a certificate of self-insurance to only one of the joint owners of a vehicle or compels the Commissioner to issue a certificate of self-insurance to all of the joint owners collectively. OCGA § 40-9-101 (a) (2) provides, in relevant part, only that the Commissioner "may, in his discretion, upon the application of such person, issue such a certificate [of self-insurance] when he is satisfied that such person has and will continue to have the ability to provide coverages, benefits, and claims-handling procedures substantially equivalent to those afforded by a policy of vehicle insurance in compliance with [former] Chapter 34 of Title 33."

The record clearly demonstrates that, as between appellee and appellant, it was agreed that it would be appellee, and appellee alone, who would seek, pursuant to OCGA § 40-9-101 (a) (2), the status of self-insurer of the jointly owned cab. The record likewise clearly demonstrates that the Commissioner, in the exercise of his discretion, was satisfied that appellee, and appellee alone, would be qualified to serve as the self-insurer of the jointly owned cab. If appellee occupied the

status of the self-insurer of the cab, it must necessarily have provided no-fault coverage to the "driver" of the cab. See former OCGA § 33-34-7 (a) (2). The parties themselves had recognized this by specifically providing that appellee, in its capacity as the self-insurer, would provide no-fault benefits to the "driver" of the self-insured cab and that "nothing" was to be construed to the contrary. To hold, as did the trial court, that appellee, in its capacity as the self-insurer, had no obligation to provide no-fault coverage to appellant, in his capacity as a "driver" of the self-insured cab, would be contrary to the parties' express agreement, the Commissioner's exercise of his discretion in the approval of that agreement and the mandatory provisions of former OCGA § 33-34-7 (a) (2).

It follows that the trial court erred insofar as it concluded that appellant must, as a matter of law, occupy only the status of "co-self-insurer" and that he has no viable no-fault claim in his capacity as the "driver" of the cab that only appellee had undertaken to self-insure.

2. Relying upon the following provision of its plan of self-insurance, as approved by the Commissioner, appellee urges that the grant of its motion for summary judgment was nevertheless correct: "Except in emergency cases, whenever drivers claim injury, they will be required to see company approved physicians and chiropractors." Appellee urges that, insofar as appellant seeks no-fault benefits for non-emergency medical services which were rendered to him by other than "company approved physicians and chiropractors," he has no viable claim and its motion for summary judgment was correctly granted.

All policies of motor vehicle liability insurance and all plans of self-insurance "must [have been issued] in accordance with the requirements of [former OCGA § 33-34-1 et seq.]." Former OCGA § 33-34-3 (a) (1). See also former OCGA § 33-34-2 (12) (defining "self-insurer"). Accordingly, under appellee's plan of self-insurance, appellee would be required to pay "basic no-fault benefits without regard to fault for economic loss resulting from . . . [a]ccidental bodily injury sustained by any . . . person while occupying the [taxicab] if the accident occurs within the United States of America, its territories or possessions, or Canada. . . ." Former OCGA § 33-34-7 (a) (2). Nothing in former OCGA § 33-34-1 et seq. otherwise authorized appellee to condition its statutory obligation to pay no-fault benefits upon the insured's submission of claims for services that had been rendered only by certain designated health-care providers or to exclude no-fault coverage for services that had been rendered by non-designated health-care providers. Since such a limitation and exclusion would not "be in accordance with the requirements of [former OCGA § 33-34-1 et seq.]," it would *not* be enforceable against appellant. The mandate of former OCGA § 33-34-7 (a) (1) that appellee "shall pay . . . no-

fault benefits" under certain specified conditions and limitations " 'is plain language. It means that every policy shall so undertake. There is no [other] limitation or qualification of this language anywhere in the statute, nothing at all to indicate that it does not mean what it says. . . . Clearly [the] provision [in appellee's plan of self-insurance] places a limitation upon the requirement of the statute and conflicts with the plain terms of the statute. It is therefore illegal and of no effect.' [Cit.]" *Travelers Indem. Co. v. Williams*, 119 Ga. App. 414, 417 (167 SE2d 174) (1969). An "exclusion cannot circumvent the clear mandate of the Act by withholding the protection required. . . . [Appellee] points out that the Georgia Insurance Commissioner has approved the [plan] of [self-]insurance containing the above exclusion. While this is entitled to consideration where the meaning of the statute is doubtful, there is no occasion to do so where the language of the statute is plain and unambiguous. [Cits.] The [mandate of the former Georgia Motor Vehicle Accident Reparations Act] ([former OCGA § 33-34-7 (a) (2)]) is plain and unambiguous in requiring all liability policies [and self-insurance plans] to undertake to pay the insured ['no-fault benefits without regard to fault for economic loss resulting from [an] . . . [a]ccidental bodily injury' such as that which was sustained by appellant]." *State Farm Mut. Auto. Ins. Co. v. Barnard*, 115 Ga. App. 857, 858 (156 SE2d 148) (1967).

It follows that the trial court's order cannot be affirmed based upon the unauthorized limitation and exclusion contained in appellee's plan of self-insurance. Appellee's plan of self-insurance itself specified that "the no-fault benefits provided . . . to drivers . . . are identical with the minimum requirements of the [former] Motor Vehicle Reparations Act of Georgia . . . and nothing herein shall be construed otherwise." To construe the exclusion of no-fault benefits for services provided to drivers by non-designated health care providers as a viable limitation would be to construe appellee's plan of self-insurance as providing to drivers no-fault benefits which were *not* identical with the minimum requirements of former OCGA § 33-34-1 et seq.

## Case No. A91A1122

3. Appellee's motion for a protective order was directed at appellant's attempt to discover evidence which would apparently be relevant only to the issue of possible certification of the instant suit as a class action. We find no error in the trial court's grant of appellee's motion for a protective order. *Aetna Cas. &c. Co. v. Cantrell*, 197 Ga. App. 672, 673 (2) (399 SE2d 237) (1990).

*Judgment affirmed in Case No. A91A1122. Judgment reversed in Case No. A91A1123. Beasley, J., and Judge Arnold Shulman concur.*

Decided November 27, 1991 —
Reconsideration denied December 12, 1991 — ■

*Darroch & Obenshain, Mark A. Barber, Daniel N. Meyer*, for appellant.
*Michael W. Broadbear*, for appellee.